OVE GNATT COMPANY *v.* JACKSON ET AL.

[No. 26,299. Filed February 24, 1933. Rehearing denied May 18, 1933.]

*Lemuel Darrow, Earl Rowley, Clarence V. Shields, Corwin & Gillen,* for appellant.

*James M. Ogden,* Attorney-General, and *George W.*

*Hufsmith* and *Earl B. Stroup,* Deputies Attorney-General, for appellees.

*Jones, Hammond & Buschman, Thompson, Rabb & Stevenson, William H. Thompson, C. Severin Buschmann,* amici curiae.

TREANOR, J.—This is an action by Ove Gnatt Company against the Board of Trustees and Ralph Howard, superintendent, of the Indiana State Farm, to enjoin the defendants from manufacturing and selling floral baskets, upon the theory that by reason of §11[1] of the act providing for the establishment of the State Farm (Acts 1913, ch 236, p. 660, 666; §12440, Burns Ann. Ind. St. 1926), and by reason of §1 of the Act of 1917[2] (ch. 83, p. 237, §§12444-12449, Burns, etc., 1926) concerning the manufacture and sale of articles at the State Prison, State Reformatory and State Farm, the defendants are making and selling them without authority of law and in violation of law.

The complaint alleges that shortly after the State Farm was established, the board of trustees and the

---

*Note 1.* §11: "It shall be the purpose of the state farm to employ the prisoners committed or transferred thereto, in work on or about the buildings and farm and in growing produce and supplies for its own use and for the other institutions of the state; in preparation of road material; and in making brick, tile, paving material and such other products as may be found practicable for the use of the state or any municipal subdivision therein and for the proper and healthful employment of such prisoners."

*Note 2.* Ch. 83: "An Act concerning the labor of the inmates of the Indiana Reformatory, Indiana State Prison and the Indiana State Farm, on state account, providing for the disposition of the product of such labor and providing penalties.

"PREAMBLE.

..."*Whereas, It is the policy of the State of Indiana to abolish* contract labor in its penal institutions; therefore,

"Section 1. Be it enacted by the general assembly of the State of Indiana, That the boards of trustees of the Indiana reformatory, the Indiana state prison and the Indiana state farm, are hereby empowered and authorized to manufacture such articles as are used by the state, its institutions and its political divisions, and to produce such articles and products as may be found practicable, and to sell the surplus, if any, upon the market."

superintendent thereof planted a considerable portion of the farm to willows and have, and now are cultivating willows for the purpose of making floral baskets; that before the Act of 1917, *supra,* said board and superintendent were engaged in the manufacture and sale of floral baskets from the willows raised on said farm and that they are selling such baskets to the trade generally in Indiana, Illinois, Missouri, and a number of other states in competition with the manufacturers of floral baskets in this state, including the plaintiff, and are selling the same at a price below the cost of the production by the use of free labor; that the institutions and political subdivisions of the state have not and can not use said baskets and that they are being manufactured in violation of the statutes and in violation of the rights imposed upon the defendants; that said baskets so manufactured by the defendants are not marked "Prison Made."

Trial by the court resulted in judgment for the defendants, denying relief to plaintiff and the question presented upon this appeal is that the decision is contrary to law.

Appellees admit that the State was, and is, through them manufacturing floral baskets and selling them to the trade as a part of its basket industry; that with the exception of 33, all of the 138,612 floral baskets made by them in 1927 were not sold to the state institutions or to political divisions of the state, and say that if such floral baskets are not made there will be a loss of from 75 to 90 per cent of the willows grown on the farm; that prior to 1927 these baskets and other surplus products were sold at prices fixed by the superintendent of the farm, but that since the filing of the complaint in the instant case, the prices at which such baskets should be sold are approved by the board of classifica-

tion as required of §3 of the Act of 1917, *supra*.[3] (§12446, Burns, etc., 1926.)

Appellant says that §1 of the Act of 1917, *supra*, deprives appellees of the right to manufacture floral baskets which, it insists, are neither "used nor useful to the state, its institutions or political divisions"; that the authority given by this section is to sell the surplus of such articles as are used by and are useful to the state, its institutions and political divisions; that since floral baskets are neither used by, nor useful to the state, the whole product must be sold; that since the state does not use or need floral baskets there can be no surplus; and that the authority granted by said section is limited to the right "to produce such articles and products as may be found practicable." Appellant further insists that the policy of this state as declared by the legislature is to employ prison labor in the production of such products and articles as are used and useful for the maintenance of the prisoners, the institutions of the state and the subdivisions thereof, and cites Acts of 1905, ch. 107, p. 178, which abolished the contract system of labor at the Indiana Reformatory.[4]

*Note 3.* §3: "The superintendent and the president of the board of trustees of the Indiana reformatory, the warden and the president of the board of trustees of the Indiana state prison, and the superintendent and president of the board of trustees of the Indiana state farm, respectively, are hereby constituted a board to be known as the board of classification of industries, and it shall be the duty of this board to determine what industries shall be operated in the institutions named in this section, to the end that unnecessary duplication of industries may be avoided, and to fix the prices of the respective articles manufactured at a rate not to exceed the market price for articles of the same grade. . . ."

*Note 4.* §12429, Burns, etc., 1926, §3, Acts 1905, ch. 107: "In the employment, education and training of the inmates of the reformatory the board of managers shall have full power to establish and introduce such trades schools as said board may determine for the training of the inmates in the mechanical arts, and to provide for the manufacture of goods on state account, for the production of such articles as are used in the institutions of the state and in certain political divisions of the state, and in the production of such articles as may be found practicable:

The extent to which prison labor shall be used and the disposition of the products of such labor is an administrative problem lying within the control of the legislature. Our General Assembly has recognized that the inmates of our penal institutions should, insofar as possible, be employed in such work as will least interfere with outside labor and industry,[5] and has enacted legislation expressly prohibiting the use of prison labor in certain industries[6] and expressly authorizing its use in certain other industries.[7]

"Provided, That said reformatory shall not produce any school books and desks used by pupils for use, or which shall be used in the common schools of the state, or print any other books or blanks except for the use of said reformatory."

*Note 5.* Acts of 1895, ch. 157, p. 372; Concurrent Resolution: "Whereas, the question of utilizing convict labor of the State of Indiana so that the production of the labor is not placed upon the common market when it comes in competition with free labor, is a question of much importance to the prosperity of free labor . . ."

Acts of 1909, ch. 110, p. 286 (contained in act providing for contract labor): "Such convict labor shall be employed at such trades and industries as shall least interfere and compete with outside labor and industries in the State of Indiana.

"A commission of five is hereby created for the purpose of investigating the condition and devising a plan by which the convict labor in this state can be employed without interfering and competing with outside labor and industries." (Providing personnel of commission, for report to governor, which report is to be laid before the next general assembly with governor's recommendation thereon.)

*Note 6.* Acts of 1899, ch. 27, p. 27, §12368, Burns, etc., 1926 (making appropriation for conducting industries on public account system): "Provided, No expenditure shall be made for printing machinery or material."

Acts of 1905, ch. 107, p. 178. (Prohibiting production school books, school desks and blanks. See note (1), p. 3, ante.)

*Note 7.* Acts of 1861, special session, ch. 43, p. 81: "Arms, implements, goods and munitions of war needed in the defense of the State or for the use of the State troops."

Acts of 1899, ch. 27, p. 27 (Amended, 1905), §12362, Burns, etc., 1926: Farm products for use of prison, surplus to be sold; timber products, incidental to clearing land.,

Acts of 1907, ch. 86, p. 112, §12370, Burns, etc., 1926: Binder twine.

Acts of 1913, ch. 83, p. 233: Work on public highways.

Acts of 1917, ch. 87, p. 253 (Amended 1919), §8298, Burns, etc., 1926: Road building materials for State Highway Commission.

It has also been the policy of the General Assembly to abolish contract labor in the penal institutions and to substitute therefor the manufacture of goods on state account. As a means of giving effect to the foregoing policies the General Assembly has authorized the production of goods in our penal institutions for the use of "the state, its institutions and political subdivisions." The use of goods by the state, its institutions and political subdivisions insures at least a limited market for the products of our penal institutions. We do not believe, however, that we can find in the acts of the General Assembly any intention to limit, either in kind or amount, the production activities in our penal institutions to articles used by the state, its institutions or political subdivisions.

In 1905 the General Assembly (Acts of 1905, ch. 107, p. 178, §12427 *et seq.* Burns Ann. Ind. St. 1926) gave the board of managers of the reformatory full power "to provide for the manufacture of goods on state account, for the production of such articles as are used in the institutions of the state and in certain political divisions of the state, and in (for) the production of such articles as may be found practicable"; subject to the restriction that the reformatory should not produce any school books and desks for use in the common schools of the state "or print any other books or blanks except for the use of said reformatory." It is clear from the foregoing that the General Assembly was substituting the state account system for contract labor and at the same time authorizing the production of articles for state use, but did not intend to limit the new system merely to the production of articles for state

Acts of 1917, ch. 80, p. 221: Printing "Indiana Mothers Baby Book" for State Board of Health.

Acts of 1929, ch. 91, p. 292, §12377.1 *et seq.* Burns Ann. Ind. St. Supp. of 1929: License plates, street highway signs and markers.

use. There was express authority given to the board of managers of the reformatory to produce "such articles as shall be found practicable"; and the express prohibition against manufacturing certain articles indicated that the preceding authorization to produce articles for use in the institutions of the state and certain political divisions was not intended to be an inhibition against manufacturing or producing articles not used by the state institutions and political divisions. To insure the use of products of the reformatory by the institutions and political subdivisions of the state, §4 of the 1905 act made it mandatory upon these institutions and political divisions to purchase supplies from the reformatory. This same section authorized the board of managers of the reformatory "to sell any surplus of articles upon the market." This authorization to sell "any surplus" of articles used in the institutions of the state and political divisions was not intended to restrict the quantity of production but to make it certain that the market for such articles was not to be limited exclusively to institutions and political divisions of the state. Obviously there was no limit placed upon the manufacture of "such articles as may be found practicable."

The contract labor system has not been used in the Indiana State Farm. The Act authorizing the creation of the State Farm contained the following expression relative to employment of prisoners:

"It shall be the purpose of the state farm to employ the prisoners committed or transferred thereto in work on or about the buildings and farm and in growing produce and supplies for its own use and for the other institutions of the state; in preparation of road material; and in making brick, tile, and paving material and such other products as may be found practicable for the use of the state or any municipal subdivision therein and for the proper and healthful employment of such prison-

ers." §12440, Burns Ann. Ind. St. 1926, Acts 1923, ch. 236, p. 660.

It is evident from the foregoing excerpt of the Act of 1913 that prisoners could be employed in making products that are practicable "for the proper and healthful employment of such prisoners" as well as in making products that are practicable for state use.

In 1917 the General Assembly took another step toward the abolishment of contract labor by passing "an act concerning the labor of inmates of the Indiana Reformatory, Indiana State Prison and the Indiana State Farm." The preamble recites that the policy of the State of Indiana is "to abolish contract labor in its penal institutions." The board of trustees are authorized to, (1) manufacture such articles as are used by the state, its institutions and its political divisions; (2) to produce such articles and products as may be found practicable; (3) to sell the surplus, if any, upon the market.

Section 3 of the Act creates a board of classification of industries "to determine what industries shall be operated in the institutions named . . . to the end that unnecessary duplication of industries may be avoided, and to fix the prices of the respective articles manufactured at a rate not to exceed the market price for articles of the same grade."

Section 4 provides for the purchase by state institutions and political divisions of articles manufactured in the three penal institutions.

We cannot accept appellant's contention that §1 of the Act of 1917 limited the power of the board of trustees of the state penal institutions to manufacture only such articles as are used by the state, its institutions and political divisions—and to sell the surplus. The result of such a construction of §1 would be that all industrial activities in the three institutions would be

suspended except those producing articles for state use, with the exception of those activities expressly authorized by legislation enacted subsequently to the Act of 1917. We do not believe that the authorization "to sell the surplus, if any, upon the market" was intended to take away from the trustees of the State Farm authority to manufacture or produce "such articles and products as may be found practicable" or to use prisoners in any industrial activities which afford "proper and healthful employment of such prisoners."

We conclude that the Board of Trustees and Superintendent of the Indiana State Farm were acting within their lawful authority in manufacturing floral baskets and selling them upon the market.

The decision of the trial court was not contrary to law. Judgment affirmed.

Myers, J., dissents.

Hughes, J., not participating.